UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOE ELIZONDO, ) | |
|       Plaintiff, ) | |
| ) | |
|   v. ) | |
| ) | CAUSE NO.: 2:12-CV-36-PRC |
| MICHAEL J. ASTRUE ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
|       Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Joe Elizondo on January 23, 2012, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on June 8, 2012. Plaintiff requests that the October 12, 2010, decision of the Administrative Law Judge to deny him disability insurance benefits be reversed. For the following reasons, the Court denies the Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security.

**PROCEDURAL BACKGROUND**

On December 2, 2008, Mr. Elizondo filed for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that he became disabled on December 7, 2004. Mr. Elizondo's application was initially denied on January 20, 2009, and again upon reconsideration on February 10, 2009.

On August 10, 2010, ALJ Michael Hellman held a video hearing at which Mr. Elizondo and a vocational expert testified. On October 12, 2010, the ALJ issued a decision finding Mr. Elizondo not disabled and denying him benefits. The ALJ made the following findings under the required

1

five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.

2. The claimant did not engage in substantial gainful activity during the time period from his alleged onset date of December 7, 2004 through his date last insured of June 30, 2007 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: status post pacemaker implantation (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination or impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c). He can lift/carry 50 pounds occasionally and up to 25 pounds frequently, stand/walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday.

6. Through the date last insured, the claimant was capable of performing past relevant work of front end loader (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, at any time from December 7, 2004, the alleged onset date, through June 30, 2007, the date last insured. (20 CFR 404.1520(f)).

Mr. Elizondo filed a request for review, which the Appeals Council denied on November 23, 2011. Mr. Elizondo now requests judicial review of the ALJ's October 12, 2010, decision, which constitutes the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 42 U.S.C. § 405(g).

# FACTUAL BACKGROUND

A. **Background**

Plaintiff was born on April 18, 1950. He was 54 years old on his alleged disability onset date of December 7, 2004. Plaintiff has an eleventh grade education. He previously worked as a front end loader and an industrial cleaner at a paint factory. His date last insured was June 30, 2007.

B. **Medical Evidence**

In 1997, Plaintiff broke his sternum in a car accident, but has not received ongoing treatment for injuries resulting from the accident. On December 7, 2004, Plaintiff presented to a hospital with syncopal episodes. Telemetry monitoring revealed an intermittent high grade atrioventricular ("AV") block. Plaintiff received a permanent pacemaker to afford him optimal protection from bradyarrhythmia.

On December 20, 2004, and January 7, 2005, Plaintiff had follow-up appointments with Dr. Dixon for his pacemaker. Plaintiff did not voice any complaints at these appointments. On January 28, 2005, Dr. Vijay Shah had Plaintiff undergo a nuclear treadmill stress test to detect exercise induced ischemia. Dr. Shah concluded that Plaintiff had good exercise capacity and had no chest pain or arrhythmia. Plaintiff had a negative EKG Stress Test, and nuclear imaging did not reveal exercise induced myocardial ischemia. Plaintiff had follow up appointments with Dr. Dixon again in October 2005, April 2006, October 2006, April 2007, and October 2007. Plaintiff did not voice any complaints during these follow up visits and reported that he was doing well. Plaintiff also underwent transtelephonic pacemaker evaluations in June, August, and December 2005; June, August, and December 2006; February, June, August, and December 2007; and February, June, and August 2008. At each of the appointments, Dr. Dixon noted normal transtelephonic and magnet

evaluations. Plaintiff did not voice any complaints during these appointments.

In April, 2008, after his date last insured, Plaintiff went to Dr. Scott Kaufman for an evaluation of his pacemaker, and returned for another evaluation in October, 2008. He did not report any complaints at either visit.

On March 29, 2005, Plaintiff had an appointment at the USS Family Medical Center for a hyperlipidemia check. He mentioned that he had back pain on his right side for two days. On July 30, 2007, Plaintiff complained to Dr. Dunning at the USS Family Medical Center that he had right lower side and back pain for five days and that he was having trouble walking. Dr. Dunning prescribed Plaintiff prescription strength Ibuprofen.

On February 13, 2009, Plaintiff visited Dr. Isidora Nantes for a hyperlipidemia check and also complained of right lumbar pain after lifting something heavy. Dr. Nantes examined Plaintiff's right lumbar area, but found no CVA tenderness, no flank mass, and no tenderness on palpation of the right lumbar area where Plaintiff was having achiness. Dr. Nantes also found hip flexion and internal and external rotation at the bilateral hip joint to be normal. A straight leg raising test was 90 degrees on both sides, and Plaintiff was negative for eliciting radicular pain. Dr. Nantes did not provide any treatment but instructed Plaintiff to take an over the counter medicine if it was really sore.

On January 8, 2009, Dr. Richard Wenzler, a state agency reviewing physician, opined that Plaintiff did not have a severe impairment prior to the date last insured. On February 10, 2009, Dr. Fernando Montoya, another reviewing physician, affirmed Dr. Wenzler's opinion.

## C. Mr. Elizondo's Testimony

At the Administrative Hearing held on August 10, 2010, Plaintiff testified that his primary

complaints were from the broken sternum in 1997 and the pacemaker in 2004. He testified that he used to work as a front end loader, but stopped working because he felt weak and tired. As of 2000, he considered himself retired. Plaintiff testified that he would not have retired from his job as a front end loader if not for his tiredness and back pain. From 2000 to 2004, Plaintiff did not work. Plaintiff alleges that he became disabled December 7, 2004, the day he presented to the hospital with syncopal episodes. Plaintiff testified that due to his pacemaker he was not to be on a treadmill.

Plaintiff testified that a typical day between December 2004 and June 2007 included waking up between four o'clock and five o'clock in the morning, showering, watching television, going outside to check the weather, and eating. Plaintiff was able to dress, bathe, and feed himself. He did his own grocery shopping to buy what he needed. Plaintiff maintained a valid driver's license and would drive himself. Plaintiff testified that he was tired all of the time. He stated that he did not have energy and did not feel like doing anything.

There was a period of three or four months in 2006 when Plaintiff worked as an industrial cleaner for a paint factory. Although the job was supposed to be part time, Plaintiff worked about forty hours per week. Plaintiff's responsibilities included cleaning up, sweeping, throwing the garbage out, and moving paint cans. Plaintiff testified that he was allowed to work at his own pace, which was slower than the normal pace, but that he quit because he was too tired to work eight hour shifts and could not stand for eight hours. Plaintiff testified that he was going to be eased out of his employment, but he quit before he could be fired.

Plaintiff testified that he is still tired all of the time and becomes short of breath. He stated that he cannot walk long distances and is still not supposed to be on a treadmill. Plaintiff stated that the doctor had not given him any treatment for these complaints, but told Plaintiff to not exert

5

himself or get angry.

**D.    Vocational Expert Testimony**

At the administrative hearing, the ALJ asked the VE to identify the work the Plaintiff performed in the 15 years prior to June 30, 2007. The VE stated that the Plaintiff had been a front end loader operator, which is classified as medium, semi-skilled work, by the Dictionary of Occupational Titles ("DOT"). He also testified that the Plaintiff's description of his work as a front end loader indicated that Plaintiff actually did light work. The VE testified that Plaintiff's work at the paint factory as an industrial cleaner was medium, unskilled work. The VE testified that Plaintiff's prior work did not provide any transferrable skills to restricted light work.

**E.    The ALJ's Decision**

The ALJ determined that, as of his date last insured, Plaintiff suffered from the severe impairment of status post pacemaker implantation, which did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525 and 404.1526. The ALJ found that the Plaintiff had the residual functional capacity to perform the full range of medium work. The Plaintiff could lift/carry 50 pounds occasionally and up to 25 pounds frequently, stand/walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday.

The ALJ determined that the Plaintiff's medical impairment could cause his alleged symptoms, but found the claimant's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. The ALJ found that Plaintiff could perform his past relevant work of a front end loader.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff challenges the ALJ's credibility determination and RFC finding.

**A.    Credibility**

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. Plaintiff argues that the ALJ's credibility determination is not supported by the record and that the ALJ failed to specify the reasons for his credibility finding. The Commissioner argues that the ALJ's credibility finding was sufficiently articulated and supported by substantial evidence.

In making a disability determination, the Commissioner will consider a claimant's statements about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a). The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)    The individual's daily activities;

(2)    Location, duration, frequency, and intensity of pain or other symptoms;

(3)    Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska,* 454 F.3d at 738.

Plaintiff argues that the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," AR 20, is an impermissibly conclusory post-hoc credibility determination. The Commissioner argues that the credibility determination is supported by evidence.

11

The ALJ must evaluate credibility before coming to a decision on the merits. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). SSR 96-7p prohibits conclusory determinations that "turn[] the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not." *Id*. at 788. The ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to the individual's statements and the reasons for the weight." SSR 96-7p; *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

If the sentence cited by Plaintiff encompassed the totality of the credibility finding in the ALJ's decision, it might indeed be improper. However, the ALJ's decision indicates that he considered a number of conflicts between Plaintiff's statements and other evidence before concluding that Plaintiff was less than credible, sufficiently articulating his credibility finding in accordance with SSR 96-7p. For example, the ALJ noted that Plaintiff never complained to his doctors about pain or physical limitations, and engaged in daily activities greater than would be expected given his complaints.

Plaintiff also challenges this explanation, arguing that the ALJ failed to recognize the difference between daily living activities and work activities. The Commissioner asserts that the ALJ properly considered Plaintiff's daily activities as one of several factors in assessing credibility.

The Seventh Circuit has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of his personal hygiene, children, or household chores with the ability to work. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility

in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (explaining that a plaintiff's ability to complete activities of daily living does not mean that he can manage the requirements of the workplace); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."). Although an ALJ may not equate the activities of daily living with work or find a plaintiff less than credible simply because he does what is necessary to stay alive, it is appropriate for the ALJ to consider daily activities as part of his credibility determination. SSR 96-7p at *3; *see also Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) ("The ALJ also noted that while [the plaintiff] claimed in her brief that her daily activities were 'minimal,' the record indicated that she engaged in significant daily activities, including working part-time as a bookkeeper, attending college classes, spending time with her granddaughter, babysitting, performing household chores, preparing meals, taking vacations, socializing with family and friends, driving, and reading."); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) ("[T]he ALJ stated that [the plaintiff]'s testimony regarding his daily activities—that, among other things, he drove, did laundry and household chores, and was able to cut grass on occasion—did not support a finding that he was totally disabled. The ALJ found that [the plaintiff]'s abilities and activities were more consistent with the opinions of [physicians] than with his own testimony."). In this case, the ALJ did not

13

impermissibly equate Plaintiff's daily activities with work activities, but concluded that the Plaintiff's subjective complaints were not consistent with his daily activities.

Plaintiff also argues that the ALJ failed to consider the record as a whole when coming to his credibility determination, but instead improperly concluded that Plaintiff was not credible because his claimed symptoms were not supported by the medical record. The Commissioner responds that the ALJ relied not only on the medical record, but also on the Plaintiff's statements, work history, and daily activities.

While an ALJ may consider the lack of objective evidence in rejecting a Plaintiff's subjective complaints, *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), "the ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). In this case, the ALJ considered Plaintiff's daily activities, work activities, and statements to determine that he was not entirely credible. He also considered the medical record, particularly noting that Plaintiff did not complain to his physicians of physical difficulties, even while working at the paint factory after the date of onset of disability. The Court recognizes that "[t]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation." *Henderson v. Barnhart*, 349 F. 3d 434, 435 (7th Cir. 2003). However, the ALJ considered Plaintiff's assertion that the work at the paint factory was too strenuous for him, and concluded that Plaintiff's work was not a disqualifying substantial gainful activity. The ALJ did find that Plaintiff's job attendance indicated that his daily activities were greater than what he had reported.

The ALJ thoroughly described the reasoning behind his credibility determination and

properly considered Plaintiff's daily activities, work activities, statements, and medical record. The Court concludes that his determination was not patently wrong and will not be disturbed.

B.      **Residual Functional Capacity**

The ALJ found that Plaintiff had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c). Plaintiff argues that the RFC finding had no specific basis in the record and failed to meet SSR 96-8p's narrative requirement. The Commissioner argues that the ALJ sufficiently articulated and supported his RFC analysis.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 873.

In arriving at a RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p 1996 WL 374184, at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*.

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily

> activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). The ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion." *Steele,* 290 F.3d at 941.

Plaintiff argues that the ALJ's RFC has no basis in the record because he rejected the only medical opinion in the record that supported his findings. The Commissioner responds that the RFC is a legal decision left to the ALJ, and the ALJ is not required to rely on a physician's opinion.

The reviewing state agency physician concluded that Plaintiff did not suffer from any severe impairments, but the ALJ found that Plaintiff suffered from the severe impairment of post pacemaker implantation. Accordingly, the ALJ's rejection of the reviewing physician's findings was beneficial to Plaintiff. If the ALJ had accepted the physician's opinion, Plaintiff would have been found "not disabled" at step 2.

The ALJ described the medical evidence, giving some weight to Plaintiff's complaints and also noting that Plaintiff's treating physician did not put any work-related restrictions on Plaintiff. Plaintiff argues that the ALJ failed to point to a medical basis for the specific limitations in the RFC. The RFC is not a medical finding, but reflects the ALJ's determination of what a claimant is able to do based on his assessment of the entire record. *Diaz,* 55 F.3d at 306 n.2. In this case, the ALJ explained that "the record contains no opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined" by the ALJ and reflected in the RFC. AR 21. If anything, the ALJ found that Plaintiff suffered from greater

16

impairments and had more functional limitations than those reflected in the medical evidence. He properly considered the entirety of the record, including Plaintiff's testimony, and drew the requisite "logical bridge" from the evidence to his conclusions.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 13] and **AFFIRMS** the Commissioner of Social Security's final decision.

SO ORDERED this 28th day of March, 2013.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL AR. CHERRY
                                              UNITED STATES DISTRICT COURT

cc:    All counsel of record